[No. 13061.  Department One.  May 6, 1916.]

A. G. MERRITT, *Respondent*, v. A. R. McLANE *et al.*,
*Appellants.*[1]

APPEAL—REVIEW—HARMLESS ERROR.  Error in the admission of improper evidence is harmless in a case tried *de novo* on appeal.

VENDOR AND PURCHASER—CONTRACT—TIME FOR DELIVERY OF DEED. Where defendant admits that he was to furnish plaintiff a deed, although the contract failed to provide therefor, the court is justified in finding that he was to furnish a deed within a reasonable time.

SAME—CONTRACT—CONSTRUCTION — PERFORMANCE — REASONABLE TIME FOR DEED.  Where defendants, being the holders of a contract for county lands which they had contracted to convey to N. & H., assigned the latter contract to plaintiff, the assignment reciting that the defendants would perfect title to the lands and pay the amounts due on the contract, and defendants admitted that they were to make deed to N. & H. (then in default) or to plaintiff if N. & H. failed to perform, the plaintiff is entitled to a deed from defendants within a reasonable time, and nine months after demand for a deed is such reasonable time.

Appeal from a judgment of the superior court for Yakima county, Grady, J., entered April 19, 1915, upon findings in favor of the plaintiff, in an action for breach of contract to convey real estate.  Affirmed.

*A. M. Murfin* and *V. O. Nichoson,* for appellants.

*J. J. Hays,* for respondent.

MORRIS, C. J.—The facts in this case are somewhat complicated and it is difficult to make a brief and comprehensive statement of them.  Prior to June 6, 1911, appellants were the holders of a contract for the conveyance of Benton county lands.  On that date they entered into a contract to convey these lands to William Neighbors and E. T. Highfill.  The consideration fixed in this contract was $2,500, of which $1,550 was paid in cash and the balance was to be paid in three installments: $400 June 1, 1912, $275 June 1, 1913,

[1]Reported in 157 Pac. 220.

and the remainder June 1, 1914, at which time, providing the payments had all been made, deed was to pass. On August 16, 1912, appellant assigned the Neighbors and Highfill contract to respondent. This assignment recited that $950 and interest was then unpaid upon the contract and that appellants agreed to perfect title to the lands and pay all claims necessary to obtain such title. It was further recited that "there is one payment of $300 and interest to be paid by said McLane;" evidently referring to the fact that such sum was due from appellants upon the contract under which they were to obtain title to the land. On the same day, respondent conveyed to appellants a house and lot at Grandview, the consideration being given as $1,600. This consideration was paid by a $100 note, the assumption of a $500 mortgage, the assignment of the Neighbors and Highfill contract, and the $950 due thereon. The remaining $50, it was stated on the oral argument, represented an interest balance. In the progress of their negotiations, McLane informed respondent, and it was then understood, that the $300 referred to in the assignment of the Neighbors and Highfill contract as unpaid on the purchase price by appellants would be due June 1, 1913. Respondent contends that it was understood as part of the transaction that he was then to receive a deed from appellants to the Benton county lands, while appellants contend nothing was said about a deed, except that if Neighbors and Highfill fulfilled their contract a deed would be given them. If they failed, a deed would be given to respondent. Sometime later, appellant discovered that the original contract of purchase did not call for a deed until June 1, 1914. On June 1, 1913, respondent demanded a deed from appellants. None was furnished. Repeated demands were then made up to February 18, 1914, when a written demand was made in which appellants were notified that, if a deed was not tendered within ten days, action would be commenced. The deed not being furnished, respondent commenced this

action on March 2, 1914, alleging failure to convey and praying judgment for $1,100.

On June 8, 1914, respondent filed a supplemental complaint alleging that Neighbors and Highfill had failed to make payments on their contract June 1, 1914, and that appellants still failed to perfect title to the land or vest respondent with title so that he was unable to make a sufficient demand on Neighbors and Highfill for a compliance with their contract. Appellants first filed a general denial for answer. On July 6th, a supplemental answer was filed, reciting that, on June 29th, appellants tendered a good and sufficient warranty deed to the Benton county lands to respondent, which was refused, which deed was then filed in the registry of the court for the benefit of respondent. In reply, respondent set forth that, at the time of the tender and refusal of the deed, the taxes for 1911, 1912 and 1913, amounting to $63.54, with interest and penalty, remained unpaid, together with water ditch maintenance and operation charges for the years 1909 to 1914, both inclusive, at $10 per annum, with six per cent interest thereon, due May 1st of each year. Respondent then filed with the court a cancellation of the Neighbors and Highfill contract, praying the court to enforce the same in the event of damages being awarded him. During the progress of the trial, it was discovered that one Stokes had become surety for respondent upon a $200 note, and held the Neighbors and Highfill contract as collateral security. The court thereupon continued the trial in order that Stokes might be made a party. Upon the trial being resumed, it was shown that the note upon which Stokes was surety had been paid and the collateral released. The court then found for respondent in the sum of $1,000; this sum representing the difference in value between the Grandview property and the $500 mortgage and the $100 payment made by appellants, and holding that, no time being mentioned in which a deed should be furnished respondent, the law would imply a reasonable time, and that such time had expired March 2, 1914.

Many errors are assigned, some on the admission of testimony by respondent that appellants agreed to give a deed June 1, 1913; but, since this is a trial *de novo*, the improper testimony has been rejected and we base our findings upon that which we deem admissible.

The main claim of error is that appellants were under no obligation to furnish a deed. The contract is silent as to a deed, and though we treat respondent's testimony concerning the time in which the deed was to be given as inadmissible and refuse to consider it, we have appellant A. R. McLane's testimony that he told respondent he would furnish a deed, either to him or to Neighbors and Highfill, depending upon whether or not Neighbors and Highfill fulfilled their contract. Neighbors and Highfill had not fulfilled their contract, and were in default at the time of the transaction between appellants and respondent. Since, then, appellant admits that he was to convey to respondent in the event of the default of Neighbors and Highfill, there is evidence in the record to which appellants can take no exception that there was an understanding between the parties as to a deed to respondent at sometime; and this being so, the lower court was justified in finding that such time was within a reasonable time.

Bearing upon this point, it further appears that, subsequent to respondent's demand for a deed on June 1, 1913, appellants endeavored to obtain a deed from the then owner of the land. The rights of respondent are to be determined not only by the contract from appellants, but also by the contract between appellants and Neighbors and Highfill, since it was appellants' rights and interest under this later contract that were assigned to him. While these contracts are meager and inaptly drawn, it is apparent that the parties to them contemplated title in appellants, which in the Neighbors and Highfill contract appellants bound themselves to convey by good and sufficient deed to Neighbors and Highfill. It comes with poor grace from appellants for them to say that

they have passed all the benefits coming to them under the Neighbors and Highfill contract but had retained all of its burdens. Respondent could not enforce a forfeiture against Neighbors and Highfill without a tender of a deed, and it does not seem to us that it was within the contemplation of the parties that a mere naked and unenforcible right was being assigned. Appellants were in no position to enforce the Neighbors and Highfill contract, since they had parted with their interest; so that, without a deed to respondent, no one was in a position to enforce it to the extent of a forfeiture. We hold with the lower court, based upon appellants' own testimony and the intendment of the two contracts, that, at the time of the transaction with respondent, it was understood that appellants were to vest respondent with title to the Benton county lands; and not having fixed any time within which to do so, the law fixes a reasonable time, and such time expired prior to March 2, 1914.

The lower court, being invested with full jurisdiction in the premises, correctly ruled in ordering a reassignment of the Neighbors and Highfill contract.

No prejudicial error arises out of the Stokes matter.

Fault is found with the valuation of the Grandview property at $1,600. The value being fixed by the parties, we will not disturb it.

The judgment is affirmed.

Mount, Ellis, Bausman, and Chadwick, JJ., concur.